(April 30, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
TONY L. HARRINGTON, Appellant.—Mikoll, J. Appeal from a
judgment of the County Court of Saratoga County (Williams,
J.), rendered November 4, 1985, upon verdict convicting defen-
dant of the crimes of burglary in the third degree and grand
larceny in the second degree.

Defendant was indicted by a Saratoga County Grand Jury
and charged with committing burglary in the third degree and
grand larceny in the second degree. Defendant was alleged to
have entered and remained unlawfully in the business prem-
ises of Calvin Spring in the City of Saratoga Springs on or
about March 10, 1985 with intent to commit larceny therein
and to have stolen a certain Ford van worth more than $1,500
in value. Spring owned and operated an Arco Service Station
on North Broadway in the city. It was located next to the
Firehouse Restaurant.

At about midnight on March 9, 1985, Albert Janik, a patron
of the Firehouse Restaurant, parked his car in the Arco lot
adjacent to the restaurant. As he exited his car, he noticed an
individual a short distance away apparently attempting to
enter a parked car in the lot. Janik went into the restaurant
returning outside about 15 minutes later to check on his car.
He spotted the same person standing near the front of the
Arco garage. Upon leaving the restaurant at about 1:00 A.M.,
Janik again saw the same person in the Arco lot apparently
trying to enter a different vehicle. Janik immediately went to
the Saratoga Springs Police Department and reported his
observations giving a description of the man he had observed.

Responding to a police radio broadcast, Officer David Levan-
ities, first on the scene, saw defendant, who matched the
description given by Janik, bent over a vehicle apparently
attempting to open the door. When defendant became aware
of Levanities' presence he ran to the rear of the restaurant.
Levanities broadcast defendant's flight over his police radio
and, in response, two other police officers saw defendant
running nearby and apprehended him. In defendant's pocket,
they found four sets of keys with white identification tags
attached. Among these keys was the key to a white van later
discovered removed from the garage and left in the middle of
the northbound lane of North Broadway in front of the
Firehouse Restaurant.

Inspection of the Arco premises revealed two broken win-
dow panes on the north side of the station, an open garage

door to a bay where the removed van was stored, spilled liquid and boot prints on the garage floor. There was also a trail of apparently fresh liquid leading directly from the open bay to the van. There was testimony that the van was in the garage for radiator repairs, that the radiator had been removed with the hoses off. The key was left in the ignition of the van. Other keys to vehicles had been left on a repair order board in the garage office but were missing from the board. A material called speedy dry was used on the floor of the station to absorb oil stains and other types of spills.

Officers at the scene compared the boot prints left inside the garage with the prints made by the soles of defendant's boots and found them to be similar or identical in pattern. They also found material on defendant's boots similar to the speedy dry visible on the station floor. Further, defendant had a cut on his hand. There was evidence that the station was locked up at 10:00 P.M. on the night of March 9, 1985 by the attendant left in charge. No one was given permission to remove the van from the bay and it was in no condition to be removed. Spring identified the keys found in defendant's possession as being from the garage.

Defendant did not take the stand at his trial and was convicted on both charges of the indictment. He was sentenced as a predicate felon to a term of 3½ to 7 years' imprisonment on each count, the sentences to run concurrently. This appeal ensued.

As the People prevailed at trial, the evidence must be reviewed in the light most favorable to the People and the People's witnesses are to be credited (see, People v Kennedy, 47 NY2d 196, 203; People v Montanez, 41 NY2d 53, 57). However, since the convictions are based on circumstantial evidence, the reviewing court must be sure that the jury has not made any inferences based on unsupported assumptions or drawn from evidence which is equivocal at best (see, People v Kennedy, supra, at 202). The inference of guilt must be the only inference that can fairly and reasonably be drawn from the facts and the evidence must exclude beyond a reasonable doubt every reasonable hypothesis of innocence (see, People v Sanchez, 61 NY2d 1022, 1024).

We reject defendant's first contention that the proof was insufficient to support his conviction for burglary in the third degree upon applying the standard for review set forth above. Defendant's conviction for that crime should therefore be affirmed.

Defendant's challenge to the sufficiency of the proof to sustain the conviction for grand larceny in the second degree, however, presents a closer question. Defendant argues that the circumstantial evidence connecting him to the van reaches the outer limits of inferential deduction. He asserts that the possibility exists that the van was moved by the attendant before the attendant left the station or by another thief, and that defendant then broke into it, stealing the key but not the van. This argument, however, is defeated by the fact that there was evidence from which the jury could conclude that the van was in the bay at the 10:00 P.M. closing time when the attendant locked the garage. The attendant had no reason to move the disabled van from where it was when Spring left the garage. The freshness of the liquid trail to the abandoned van, the fact that defendant was in possession of the keys, including the van key, and his continued presence at the scene attempting to enter other vehicles, all indicate that defendant was the one who removed the van from the garage. The evidence viewed in its entirety excludes the remote possibility, indeed the speculation, that another thief was on the scene and moved the van sometime after 10:00 P.M. and before defendant was first observed in the Arco lot at about midnight (see, People v Lagana, 36 NY2d 71, 73-74). The evidence viewed in toto was sufficient to exclude all reasonable hypotheses except guilt. Thus, defendant's conviction for the crime of grand larceny in the second degree should also be affirmed.

Judgment affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.